Joseph Jaspan, J.
The defendants Donaudy and Wallice are charged in an indictment with conspiracy in the fourth degree, a class B misdemeanor (Penal Law, § 105.00) and with receiving unlawful gratuities, a class A misdemeanor (Penal Law, § 200.35) allegedly committed while both were Suffolk County public officials.
The defendant Donaudy has now moved for a dismissal of the indictment upon various grounds considered infra and if that relief is not granted, for a severance of his trial from that of his codefendant Wallice. The defendant Wallice moved on July 2, 1976 that he be deemed to have joined in the motion to dismiss and his application was granted without opposition.
The defendants urge dismissal because (a) they were denied a speedy trial, (b) the People have failed to comply with an order of the County Court dated November 21, 1975 which required them to serve Donaudy with a bill of particulars and provide other ordered pretrial discovery items and (c) the People have improperly used a Grand Jury, after indictment, to gather evidence for the prosecution of this case. A challenge to the composition of the Grand Jury which indicted has been withdrawn.
The motion by Donaudy for a separate trial is based upon a fear that his codefendant may have made an admission or confession which would incriminate him and therefore would *789 not be admissible in a joint trial (Bruton v United States, 391 US 123).
FACTUAL BACKGROUND
Underlying the legal dispute on this motion is the overlapping, if not conflicting, jurisdictional interests and responsibilities of the District Attorney of the county and of Honorable Joseph P. Hoey, the Special Prosecutor, appointed by the Attorney-General of the State pursuant to executive order No. 14 dated September 11, 1975 as amended on December 11, 1975. The amended order was designed to give the Special Prosecutor authority to investigate the presentation of this case to the Grand Jury.
The executive order authorized inquiry before one or more grand juries of "any and all unlawful acts or omissions or alleged unlawful acts or omissions” of the Police Commissioner of the county or any present or former member or employee of the police department and of the District Attorney of the county or of any present member or former member or employee of his office and "any and all unlawful acts or omissions or alleged unlawful acts or omissions in any way related” to the above.
In accordance therewith, Mr. Hoey is pursuing an investigation of information that improper influence was brought to bear upon members of the District Attorney’s staff to prevent the indictment of Donaudy for the more serious crimes.
In effect the Special Prosecutor is inquiring as to why the defendant Donaudy was indicted for misdemeanors rather than one or more felonies.
The misdemeanor indictment was handed up on May 5, 1975 and the defendants were arraigned on May 7, 1975 at which time they were given 45 days to make motions. Wallice made his motion on June 13, 1975 and discovery was granted on July 9, 1975. The defendant Donaudy asked for and was granted additional time to make his motion and ultimately by order of November 21, 1975 the District Attorney was required to furnish a bill of particulars and other information within 10 days thereafter. The bill was not served until June 4, 1976 giving rise to the claim that the People were not ready for trial until that date and therefore violated the defendants’ right to a speedy trial.
A determination of this issue depends upon the intervening *790 events which I find to have justified the People’s failure to respond more promptly.
This case first appeared on the Trial Calendar of this court on March 17, 1976 and was adjourned for reasons not solely attributable to the People to May 21, 1976. On that date the People said they were ready for trial. Donaudy asked for and was granted time to make this motion to dismiss since he had not yet received his bill of particulars and the other pretrial information ordered on November 21, 1975. This motion ensued and a formal hearing was held on July 2, 1976.
The testimony and evidence at that hearing established that the file in this case had been turned over to the Honorable Joseph P. Hoey, the Special Prosecutor, at his request, in October, 1975 and had not been returned to the District Attorney until May, 1976. In the interim, Mr. Hoey on November 14, 1975 wrote to the District Attorney advising him that the case was being reviewed by his office and requested that the proceeding and another "be held in abeyance until we completely review the files.”
In the intervening months before May, 1976, there were correspondence and conferences with respect to this matter and an application by the Special Prosecutor to the Governor to supersede the District Attorney in the prosecution of this case. As late as March 19, 1976 Mr. Hoey reaffirmed to the District Attorney the fact that his investigation was continuing. In fact he was issuing subpoenas and questioning witnesses before an extraordinary special Grand Jury.
The total impact of the interest and activities of the Special Prosecutor in this case was to delay the District Attorney’s preparations for trial. Any precipitous action by the District Attorney might have been construed as an attempt to thwart the ongoing investigation.
No prejudice to the defendants’ case has been established. Nor is there any indication that the delay was intended to gain any trial advantage for the People. The delay between November 21, 1975 and June 4, 1976 was attributable to the special circumstances referred to above. The District Attorney acted with proper and reasonable dispatch as soon as he could.
CONCLUSIONS OF LAW
SPEEDY TRIAL ISSUE
While the defendants’ right to a speedy trial is guaranteed *791 by the Constitution (Sixth and Fourteenth Arndts) and by statute (CPL 30.20; Civil Rights Law, § 20) there is no specific temporal duration after which a defendant automatically becomes entitled to release. (People v Taranovich, 37 NY2d 442.) The court must examine the particular factors involved in the delay. (People v Prosser; 309 NY 353, 360.) This principle is recognized by the provisions of CPL 30.30 (subd [4], par [g]) which excuses periods of delay due to a variety of specified reasons including delay occasioned by "exceptional circumstances”.
I find that the triangle of interests in this case involving the defendants, the District Attorney, and the Special Prosecutor justified the delay and constituted the exceptional circumstances contemplated by the State statute and is not violative of any constitutional standard. (Barker v Wingo, 407 US 514.)
The delay computed on the basis most favorable to the defendants was approximately six months — not sufficient to constitute prejudice per se to the defendants. Nor was there proof of actual prejudice to the defendants’ ability to defend themselves. In fact the defendants themselves were not ready for trial at any date earlier than May 21, 1976.
No basis exists for a dismissal of the indictment upon the ground that the defendants have been denied a speedy trial.
FAILURE TO COMPLY WITH THE DISCOVERY ORDER
The delay has been satisfactorily explained. The decision in United States v Blauner (337 F Supp 1383), cited by the defendants is not applicable. In that case there was inexcusable long delay occasioned by the prosecution involving continuous defaults. In the instant case the People responded at the earliest practical time under the circumstances.
The motion to dismiss for failure to more promptly comply with the order of November 21, 1975 is denied. CPL 240.40 does not mandate any other result.
USE OF THE EXTRAORDINARY SPECIAL GRAND JURY
The defendants also urge that the District Attorney has improperly used a Grand Jury to gather evidence for the prosecution of this indictment.
Specifically, they claim that a subpoena duces tecum issued in January, 1976 by the Special Prosecutor was used to gather information which was later supplied to the District Attorney *792 to aid him in the prosecution of this indictment. However, the subpoena was the subject of a motion to quash. During oral argument of that motion, the Special Prosecutor’s office indicated that no information obtained during his investigation of Donaudy would be turned over to the District Attorney. In view of this representation, Mr. Justice Harold Birns ruled that the matter was moot.
The defendant now maintains that he has good reason to believe that the Special Prosecutor supplied the District Attorney with some evidence which will be used against the defendants in this prosecution. They have not stated with any specificity what information is alleged to have been involved or what the sources of their belief are with respect thereto. The District Attorney denied receipt of any such information.
After a defendant has been indicted, a prosecutor may not use a Grand Jury for the purpose of securing additional information or freezing testimony in and of the prospective trial (United States v Fisher, 455 F2d 1101; Matter of National Window Glass Workers, 287 F 219) but a good faith inquiry into other charges within the scope of the prosecutor’s authority is not prohibited even if it were to incidentally produce some additional evidence in the pending case. (United States v Pack, 150 F Supp 262; United States v Dardi, 330 F2d 316, cert den 379 US 845.)
In Fisher, the United States Attorney, in a bank robbery prosecution improperly had a coconspirator testify before the Grand Jury after the indictment in order to "freeze” his testimony. The United States Court of Appeals held this to be improper, but affirmed the defendant’s bank robbery conviction.
Similarly, in National Window Glass Workers a Grand Jury investigation was stayed by the court where it appeared that a Grand Jury in one district was being used for the purpose of securing testimony for the use of a trial in another district.
In Dardi, the defendant’s secretary was subpoenaed to testify before the Grand Jury on a conspiracy to obstruct justice charge. The court held that (p 336) " 'the Grand Jury’s inquiry into a possible conspiracy to obstruct justice was conceived and carried out in good faith and in a manner that did not prejudice the complaining defendant’ ”. The court further held that the secretary’s Grand Jury subpoena was not " 'a subterfuge to elicit testimony for use at this trial’ ”. The conviction was affirmed.
*793 In Pack, a witness subpoenaed to appear and give testimony before a Grand Jury moved to set aside the subpoena based on the fact that the government was seeking to take testimony for use in a criminal trial under indictment. The court held that where the government also sought to elicit evidence from the witness in furtherance of the general inquisitorial powers of the Grand Jury as to offenses other than that encompassed within the pending indictment, the motion should be denied.
The inquiry of the Special Prosecutor was conceived and carried out in good faith in pursuance of the powers granted to him by Executive Order No. 14. There is no shred of evidence to support a claim that these powers were used for any other purpose or that in fact the Special Prosecutor was assisting the District Attorney in the prosecution of this case. Nor was any information derived from his investigation handed over to the District Attorney to help in the prosecution of this case.
This portion of the motion is also denied.
THE MOTION TO SEVER
The People deny the existence of any confession or statement which would run afoul of Bruton (391 US 123, supra). The motion to sever is denied with leave to renew if at any time before or during the trial it appears that the codefendant Wallice has made a statement inculpating Donaudy and said statement is to be offered in evidence under circumstances which would preclude cross-examination with respect thereto.
conclusion
The motion to dismiss the indictment is in all respects denied. The motion to sever is also denied with leave to renew as indicated (supra).